IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| ALICIA B. RILEY | ) |
|            PLAINTIFF | ) |
| vs. | ) Case No. 5:19-cv-05139-TLB |
| WAL-MART ASSOCIATES, INC., WAL-MART STORES ARKANSAS, LLC, and WALMART INC. | ) |
|            DEFENDANTS | ) |

## COMPLAINT

Comes now, Alicia B. Riley, by and through her attorneys, McMath Woods P.A., and states the following as her Complaint:

## PARTIES

1. Plaintiff Alicia B. Riley ("Riley") is a resident and citizen of Bentonville, Arkansas, which is located in Benton County, Arkansas.

2. Defendant Walmart Associates, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business located in Bentonville, Arkansas. Its registered agent for service is C T Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

3. Defendant Walmart Stores Arkansas, LLC is a limited liability company with its principal place of business located in Bentonville, Arkansas. Its registered agent for service is C T Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

4. Defendant Walmart Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business located in Bentonville, Arkansas. Its registered agent for service is C T Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

5. Defendants Walmart Inc., Wal-mart Stores Arkansas, LLC, and Wal-Mart Associates, Inc., are collectively hereinafter referred to as "Defendants," "Walmart," or the "Company," unless specifically identified otherwise.

## JURISDICTION AND VENUE

6. Under Arkansas' long-arm statute, Ark. Code Ann. § 16-4-101(b), and the Fourteenth Amendment of the United States Constitution, this Court has personal jurisdiction over all Defendants. They are all engaged in the business of retail sales with a principal place of business in Bentonville, Arkansas.

7. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1367. Plaintiff alleges employment-related claims under two federal statutes, and the Arkansas statutory claims arise out of the same case or controversy, namely Plaintiff's employment with Walmart and the circumstances surrounding the termination of her employment.

8. This Court is the proper venue for this matter. Ms. Riley both resided and worked in this District during the relevant period of her employment with Walmart, and Walmart is headquartered in the District.

## FACTS

9. Plaintiff Alicia Riley is an African-American female who worked for Walmart from September 27, 1993, until Walmart discharged her on June 15, 2018.

10. In May 2016, because of Riley's outstanding job performance and lengthy tenure with Walmart, the Company promoted her to the position of Senior Manager of Merchandising Logistics and awarded her a substantial pay raise. From the time of May 2016 until Ms. Riley's discharge, she worked in Walmart's headquarters in Bentonville, Arkansas.

11. In the Senior Manager position, Ms. Riley received favorable performance evaluations. In 2016, Ms. Riley received an "Exceeds Expectations" rating from her supervisor. In 2017, she received the rating of "Solid Performer."

12. Soon after Ms. Riley was promoted to Senior Manager she experienced discriminatory treatment because of her race.

13. Riley's direct supervisor, Ivy Barney, and Alex Laputz, another Walmart manager overseeing Riley, subjected her to various improper treatment because of her race, including, but not limited to, permitting Riley's colleagues to make racially offensive comments to her, making racially offensive comments to Riley, taking projects away from Riley, ridiculing Riley in front of her colleagues, and applying a higher standard of job performance to her compared to her similarly situated white coworkers.

14. Riley complained as early as the summer of 2016 as well as on later dates about improper racial treatment of her.

15. Instead of addressing the improper treatment of Riley or even improving his treatment of her, Laputz, with Walmart's support and knowledge, began to systematically retaliate against Riley.

16. In late February 2017, Laputz met with Riley for the sole purpose of conveying to her a thinly veiled threat that she would lose her job.

17. Days later, Laputz gave Riley the first disciplinary notice she had received in her then almost twenty-four-year tenure with Walmart.

18. The "coaching" was based on a fabrication of Riley's use of leave and a misapplication of Walmart's leave policies. As Laputz knew when he gave the coaching to Riley, she had been approved for paid time off from work for a brief period.

19. Recognizing that the coaching constituted retaliation and race discrimination, Riley lodged a complaint with Walmart's human resources department. In both March and again in June 2017, she expressed concerns to various Company human resource representatives.

20. During Riley's employment, Walmart took no corrective action against Laputz or any other Walmart associate in response to Riley's complaints.

21. The poor treatment of Riley continued into the remainder of 2017. Her colleagues, including a white male colleague, Matt Couch, subjected Riley to racially offensive comments and referred to her as "worthless" on at least one occasion.

22. Kyle Carlyle, who became Riley's supervisor in the summer of 2017, took no action to prevent the improper treatment of Riley, even though Riley complained to him of race discrimination on numerous occasions, including as late as in September 2017.

23. The retaliation and discrimination culminated in Walmart notifying Riley on October 12, 2017, that it had decided to discharge her.

24. Walmart offered the pretextual grounds of job elimination for the discharge.

25. Riley's job was not in fact eliminated.

26. Riley's white, similarly situated colleagues in the same department were permitted to remain employed with the Company performing a job that was substantially identical to Riley's Senior Manager position.

27. Riley timely filed an EEOC charge on April 9, 2018, alleging race discrimination and unlawful retaliation.

28. On May 1, 2019, the EEOC issued Riley a Dismissal and Notice of Rights.

### COUNT I: TITLE VII RACE DISCRIMINATION

29. Riley realleges Paragraphs 1 through 28 as if set forth word for word herein.

30. Riley is African-American and therefore a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

31. At all relevant times, Riley was qualified to and did perform more than adequately her position with Walmart.

32. Riley suffered an adverse employment action when Walmart discharged her on June 15, 2018.

33. Riley's similarly situated white colleagues were treated more favorably.

34. Riley's race was a motivating factor in Walmart's decision to terminate her employment.

35. Riley sustained damages as a result of Walmart's discriminatory actions.

36. Therefore, Walmart engaged in race discrimination in violation of Title VII when it discharged Riley.

### COUNT II: 42 U.S.C. § 1981 RACE DISCRIMINATION

37. Riley realleges Paragraphs 1 through 36 as if set forth word for word herein.

38. Riley is African-American and therefore a member of a protected class under 42 U.S.C. § 1981 ("Section 1981").

39. At all relevant times, Riley was qualified to and did perform more than adequately her position with Walmart.

40. Riley suffered an adverse employment action when Walmart discharged her on June 15, 2018.

41. Riley's similarly situated white colleagues were treated more favorably.

42. Riley's race was a motivating factor in Walmart's decision to terminate her employment.

43. Riley sustained damages as a result of Walmart's discriminatory actions.

44. Therefore, Walmart engaged in race discrimination in violation of Section 1981 when it discharged Riley.

## COUNT III: ARKANSAS CIVIL RIGHTS ACT
## RACE DISCRIMINATION

45. Riley realleges Paragraphs 1 through 44 as if set forth word for word herein.

46. Riley is African-American and therefore a member of a protected class under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 et seq. ("ACRA").

47. At all relevant times, Riley was qualified to and did perform more than adequately her position with Walmart.

48. Riley suffered an adverse employment action when Walmart discharged her on June 15, 2018.

49. Riley's similarly situated white colleagues were treated more favorably.

50. Riley's race was a motivating factor in Walmart's decision to terminate her employment.

51. Riley sustained damages as a result of Walmart's discriminatory actions.

52. Therefore, Walmart engaged in race discrimination in violation of the ACRA when it discharged Riley.

## COUNT IV: TITLE VII RETALIATION

53. Riley realleges Paragraphs 1 through 52 as it set forth word for word herein.

54. Riley engaged in protected activity on numerous occasions when she properly and timely complained to Walmart management about the offensive and racially discriminatory treatment to which she was subjected by her coworkers and Walmart management.

55. Riley suffered an adverse employment action when Walmart discharged her on June 15, 2018, and otherwise engaged in retaliation.

56. Riley's protected activity was a motivating factor in Walmart's decision to terminate her employment.

57. Riley sustained damages as a result of Walmart's retaliatory actions.

58. Therefore, Walmart engaged in unlawful retaliation in violation of Title VII when it discharged Riley.

## COUNT V: SECTION 1981 RETALIATION

59. Riley realleges Paragraphs 1 through 58 as it set forth word for word herein.

60. Riley engaged in protected activity on numerous occasions when she properly and timely complained to Walmart management about the offensive and racially discriminatory treatment to which she was subjected by her coworkers and Walmart management.

61. Riley suffered an adverse employment action when Walmart discharged her on June 15, 2018, and otherwise engaged in retaliation.

62. Riley's protected activity was a motivating factor in Walmart's decision to terminate her employment.

63. Riley sustained damages as a result of Walmart's retaliatory actions.

64. Therefore, Walmart engaged in unlawful retaliation in violation of Section 1981 when it discharged Riley.

### COUNT VI: ARKANSAS CIVIL RIGHTS ACT RETALIATION

65. Riley realleges Paragraphs 1 through 64 as if set forth word for word herein.

66. Riley engaged in protected activity on numerous occasions when she properly and timely complained to Walmart management about the offensive and racially discriminatory treatment to which she was subjected by her coworkers and Walmart management.

67. Riley suffered an adverse employment action when Walmart discharged her on June 15, 2018, and otherwise engaged in retaliation.

68. Riley's protected activity was a motivating factor in Walmart's decision to terminate her employment.

69. Riley sustained damages as a result of Walmart's retaliatory actions.

70. Therefore, Walmart engaged in unlawful retaliation in violation of the ACRA when it discharged Riley.

71. Riley seeks a damage award in excess of the amount required to establish diversity jurisdiction in federal court.

72. Riley is entitled to compensatory damages, including for emotional distress, and back pay.

73. Riley is entitled to front pay or reinstatement.

74. Riley is entitled to an award for reasonable attorney's fees and costs.

75. Riley is entitled to an award for all other damages available under Title VII, Section 1981, and the Arkansas Civil Rights Act.

WHEREFORE, Alicia Riley prays for the following relief in this matter:

(a) a finding that Defendants discharged her because of her race in violation of Title VII, Section 1981 and/or the ACRA;

(b) a finding that Defendants discharged her and otherwise engaged in unlawful retaliation in violation of Title VII, Section 1981 and/or the ACRA;

(c) a judgment in favor of Riley and against Defendants on the race discrimination count under Title VII;

(d) a judgment in favor of Riley and against Defendants on the race discrimination count under Section 1981;

(e) a judgment in favor of Riley and against Defendants on the race discrimination count under the ACRA;

(f) a judgment in favor of Riley and against Defendants on the unlawful retaliation count under Title VII;

(g) a judgment in favor of Riley and against Defendants on the unlawful retaliation count under Section 1981;

(h) a judgment in favor of Riley and against Defendants on the unlawful retaliation count under the ACRA;

(i) an award for compensatory damages, including emotional distress and for back pay damages;

(j) an order compelling Defendants to reinstate Riley or, in lieu thereof, an award of reasonable front pay;

(k) an award for punitive damages;

(l) an award for reasonable attorney's fees and costs;

(m) an award for pre- and post-judgment interest; and

(n)     all other relief to which Riley is entitled.

                                  Respectfully submitted,

By:  /s/ *John D. Coulter*          
      John D. Coulter (Ark. Bar No. 98148)
      MCMATH WOODS P.A.
      711 West Third Street
      Little Rock, Arkansas 72201
      Telephone: 501-396-5400
      Facsimile: 501-374-5118
      E-mail: john@mcmathlaw.com

      ***Attorneys for Plaintiff***
      ***Alicia B. Riley***